**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **RANI F. KHOURY,** ) | |
| Movant, ) | |
| vs. ) | No. 3:17-CV-1406-D-BH |
| ) | No. 3:12-CR-0318-D (6) |
| ) | |
| **UNITED STATES OF AMERICA,** ) | |
| Respondent. ) | Referred to U.S. Magistrate Judge |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

By *Special Order 3-251*, this habeas case has been automatically referred for findings, conclusions, and recommendation. Based on the relevant findings and applicable law, the *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody* (doc. 1), filed on May 26, 2017, should be **DENIED** with prejudice.

**I.  BACKGROUND**

Rani F. Khoury (Movant) contends that his trial attorneys failed to file a notice of appeal as requested in Cause No. 3:12-CR-318-D.  The respondent is the United States of America (Government).

**A.    Plea and Sentencing**

On October 3, 2012, Movant was charged by indictment with conspiracy to commit mail fraud, wire fraud, and bank fraud in violation of 18 U.S.C. §§ 1349, 1341, 1343, 1344 (count one); mail fraud, telemarketing, and aiding and abetting in violation of 18 U.S.C. §§ 1341, 2326, 2 (counts two through twenty); and wire fraud, telemarketing, and aiding and abetting in violation of 18 U.S.C. §§ 1343, 2326, 2 (counts twenty-one through twenty-six). (*See* doc. 1.)[1] He pleaded guilty

---

[1]  Unless otherwise indicated, all document numbers refer to the docket number assigned in the underlying criminal action, 3:12-CR-318-D.

on July 10, 2015. (*See* docs. 459, 849.)

In a factual resume, Movant agreed that he was part of a conspiracy to defraud timeshare owners. (*See* doc. 385.) One of the businesses in which he was involved received in excess of $4,320,600 in funds that had been fraudulently solicited, and another received in excess of $4,621,175. (*Id.* at 5, ¶ 14, at 6, ¶ 17.) A third business processed approximately $223,911 in fraudulently solicited funds. (*See id.* at 7, ¶ 18.) A fourth business made false material representations that induced two persons to send it checks in the amounts of $1,998 and $2,120. (*See id.* at 8, ¶ 22.) Movant understood that as of December 2014, "the government could readily prove that [he] could reasonably foresee losses incurred by the victims during his participation in the conspiracy of approximately $10,887,684.08 (i.e. more than $7,000,000.00, but less than $20,000,000.00)." (*See id.* at 8, ¶ 23.)

In the plea agreement, Movant agreed to plead guilty to count one, and the parties agreed that the appropriate term of imprisonment was not more than 216 months. (*See* doc. 386.) The Government agreed that it would dismiss the remaining counts, and that it would not bring any additional charges against him based on the conduct underlying and related to his guilty plea. (*See id.* at 5.) Movant agreed to waive his right to appeal from the conviction and sentence. (*See id.* at 6.) He reserved the right to bring a direct appeal of a sentence exceeding the statutory maximum punishment, to challenge the voluntariness of his guilty plea or the appellate waiver, and to bring a claim of ineffective assistance of counsel. (*See id.*)

At the plea hearing on July 10, 2015, Movant acknowledged that he had read the factual resume carefully and discussed it with counsel. He understood the factual resume and did not have any changes or corrections to it. He admitted that the facts in the factual resume were true and

correct.  (*See* doc. 849 at 20-21.)  He also understood that he was waiving his right to appeal except in very limited circumstances.  (*See id*. at 17-18.)

On January 14, 2016, the United States Probation Office (USPO) filed a Presentence Report (PSR) in which it applied the 2015 United States Sentencing Guidelines Manual (USSG). (*See* doc. 590-1 at 12, ¶ 53.)  For count one, it found that the base level offense was 7.  (*See id*. at 13, ¶ 54.) The reasonably foreseeable intended loss was $10,918,506.20, based on agents' analysis of bank accounts of the businesses involved in the case.  (*See id*. at 11, ¶ 47, at 13, ¶ 54.)  Because the intended loss was more than $9,500,000, but not more than $25,000,000, it added 20 levels under USSG § 2B1.1(b)(1)(K).  Other factors increased the offense level to 35.  (*See id*. at 13, ¶¶ 54, 57, 59.)  Three levels were deducted for acceptance of responsibility, resulting in a total offense level of 32.  (*See id*. at 13, ¶ 63.)  Based on a criminal history category of three and an offense level of 32, the resulting guideline range was 151-188 months' imprisonment.  (*See id*. at 21, ¶ 106.)  The PSR also found that the amount of restitution was $1,587,449.58.  (*See id*. at 23, ¶ 117.)

Counsel objected to the loss amount in the PSR as not supported by the record.  (*See* doc. 604 at 2.)  The Government moved to correct the restitution amount by removing victims from the list, adding victims, and correcting amounts for other victims.  (*See* doc. 703.)  An addendum to the PSR filed on May 10, 2016, found that the restitution amount was $1,583,252.28.  (*See* doc. 706-1 at 2.)  The Government also moved for a downward departure so that the sentence would not exceed 121 months because of Movant's level of cooperation, and because the 2015 sentencing guidelines lowered the sentencing range from the pre-2015 guidelines that were in effect when the parties agreed on a cap of 216 months.  (*See* doc. 705.)

At the sentencing on May 13, 2016, counsel did not waive the objection to the loss amount,

3

but noted that the objection was a "place holder" for the argument on restitution. (*See* doc. 850 at 6.) The Court overruled the objection to the loss amount. (*See id*. at 7.) Regarding restitution, counsel stated that there had not been sufficient time to verify the information in the Government's motion to correct restitution. Counsel stated that the parties agreed that Movant would not object to the entry of restitution in the judgment, and that he would "confer with the government if we have any changes or anything that we need – that feels like we need to be addressed within the next 90 days." The prosecutor agreed to work with the defense and bring to the Court's attention any changes that needed to be made about restitution. The Court stated that the parties would have an opportunity to do that within 90 days. (*See* doc. 850 at 7-9.) Movant was sentenced to 97 months' imprisonment, the remaining counts were dismissed, and the amount of restitution was set at $1,583,252.28. (*See* doc. 711.)

**B.    Substantive Claim**

The § 2255 motion asserts that counsel was ineffective for failing to file a notice of appeal at Movant's instruction. (*See* 3:17-CV-1409-D, doc. 1 at 4.) Movant filed a declaration in support of his claim. (*See id.*, doc. 3-1.) It stated:

> I met with [both counsel] immediately following sentencing. I told my attorneys that I did not believe the loss and restitution amounts were correct. [Counsel] told me that they would request a hearing within 90 days on the matter. I then asked my attorneys whether we should file an appeal at that time or after the intended hearing. My attorneys told me it was up to me whether I wanted to appeal. At that time, I instructed my attorneys to file a notice of appeal on my behalf.
>
> [Counsel] assured me that they would continue to represent and would stay in touch with me once I arrived back in Orlando, Florida. I attempted to contact my attorneys numerous times after I returned to Florida, but received no communications from them.
>
> I made clear to [counsel] that I wanted to appeal my sentence, and I believed they would file the notice of appeal on my behalf as I requested.

4

(*Id*., doc. 3-1 at 2.)

The Government filed a response with an appendix that included an affidavit from lead counsel. (*See id*., docs. 9, 10.) It stated that he emphasized to Movant during the discussions about pleading guilty that the Court would decide the sentence, and that "any decision by the Court would realistically be final. The plea of guilty would realistically eliminate any chance of a successful appeal on issues raised during the representation." (*Id*., doc. 10 at 3.) It also stated:

> After sentencing, [Movant, co-counsel] and I did meet in our office. I have no independent recollection of advising [Movant] concerning an appeal, or agreeing to file a Notice of Appeal. Based on long-time custom and practice it would be extremely rare that I did not go over that information with him. I would remember if [Movant] requested that I file an appeal and would have made a contemporaneous note of that request to remind myself to file an appeal. [Movant] did not make such a request at that meeting or subsequently, nor do I have any notes to reflect such request was made.

(*Id*. at 3-4.) Counsel also explained that there were discussions about restitution, and that defense investigators and experts were reviewing the restitution information provided by the Government. Lead counsel and co-counsel said that they would monitor the sentencing of co-defendants to determine whether changes were made in the amount of restitution in those cases. There was an agreement with the Government that any changes in restitution would be submitted to the Court within 90 days after sentencing. (*Id*. at 4.)

C. **Evidentiary hearing**

On February 21, 2019, an evidentiary hearing was held on Movant's claim that counsel failed to file a notice of appeal as requested. Movant, lead counsel, and co-counsel testified.

According to Movant, counsel objected to the loss amount at the sentencing hearing because it increased from $7 million to $10 million. The loss amount for several co-defendants was $7million. He believed that the Government would review both the loss amount and restitution

5

within 90 days after sentencing and reduce the loss amount if it was too high. After the sentencing hearing, Movant and his attorneys were walking to the elevators. At the elevators, he told one attorney that he thought that they needed to appeal the $10 million loss amount. Counsel said to wait until the 90-day hearing, and that it would be corrected at that time. Movant assumed that the loss amount and restitution would be corrected in 90 days, and that an appeal would not be necessary. Movant knew that he had 14 days to file a notice of appeal, but he assumed that the judgment would not be final until after the 90-day period.

     Movant claimed that he did not know what his appellate rights were at that time. He and his attorneys went across the street to their office after sentencing for a meeting. In that meeting, he did not ask them to file an appeal. Later, he emailed counsel about an extension of time self-surrender to serve his sentence. He did not mention an appeal in that email because he was still waiting for the 90-day hearing. He also did not ask them later about an appeal because they were competent, and he did not think that he needed to ask them about it. He did not ask his attorneys about an appeal after he went to prison because he was not able to email or call them. He wrote them a letter but received no response. The only way to contact the attorneys was to have his ex-wife email them. She tried to call them, but he does not know what happened in that call. Although he wrote to the Court about other matters and filed several motions after sentencing, he did not know that he could write to the Court about an appeal.

     Lead counsel testified that the loss amount was not significant at sentencing because of the Government's motion for a downward departure. He filed a general objection to the loss amount in the PSR although he did not have any information that contradicted it, but Movant insisted that the amount was incorrect. Regarding restitution, counsel and the prosecutor agreed to review the

6

restitution amount after sentencing to see if there was double-counting or other errors, and because there were co-defendants who had not yet been sentenced. They agreed that if the restitution amount changed, they could move to amend the judgment to reflect the correct amount within 90 days, but he believed that there was sufficient evidence to support the restitution amount. He did not recall any conversation at the elevators after sentencing. In the office, he explained to Movant that they would have 90 days to amend the restitution amount, but he did not recall that they discussed the loss amount at that meeting. He did not recall Movant asking him what would happen if he disagreed with the restitution amount, or telling him to file an appeal. If Movant had said that he wanted to appeal, counsel would have filed one. Counsel had conversations with Movant after sentencing by email or phone. He did not recall having any conversations with Movant after he went to prison. He had conversations and exchanged correspondence with Movant's ex-wife about obtaining information necessary for another post-judgment matter that was unrelated to the loss amount or restitution. After the 90 days to amend the restitution amount had passed, Movant did not ask counsel if he could file an appeal.

Co-counsel testified that he did not recall discussing an appeal at the elevators. In the office, they discussed the possibility of an adjustment to the restitution within 90 days. He did not recall that Movant indicated that he wanted to appeal in the office. He talked with Movant in person or by email before he went to prison. After that, he talked with the ex-wife.

Movant's appointed attorney for purposes of the evidentiary hearing argued that Movant misunderstood whether he could appeal after the 90-day period; he believed that he could return to Court in 90 days and challenge the loss amount and restitution. Movant contended that counsel did not file a notice of appeal after Movant asked him to appeal. The appointed attorney clarified that

7

despite testimony and argument at the evidentiary hearing regarding discussions between trial counsel and Movant about appellate rights, Movant was not raising a claim of ineffective assistance of counsel for failure to consult with him about an appeal.

## II. SCOPE OF RELIEF AVAILABLE UNDER § 2255

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (citations and internal quotation marks omitted). It is well-established that "a collateral challenge may not do service for an appeal." *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (*en banc*) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)).

A failure to raise a claim on direct appeal may procedurally bar an individual from raising the claim on collateral review. *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001). Defendants may only collaterally attack their convictions on grounds of error omitted from their direct appeals upon showing "cause" for the omission and "actual prejudice" resulting from the error. *Shaid*, 937 F.2d at 232. However, "there is no procedural default for failure to raise an ineffective-assistance claim on direct appeal" because "requiring a criminal defendant to bring [such] claims on direct appeal does not promote the[] objectives" of the procedural default doctrine, "to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro v. United States*, 538 U.S. 500, 503-04 (2003). The Government may also waive the procedural bar defense. *Willis*, 273 F.3d at 597.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment to the United States Constitution provides in relevant part that "[i]n

8

all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. art. VI.  It guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985).  To successfully state a claim of ineffective assistance of counsel, the prisoner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his or her defense. *Id.* at 687.  A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *Id*. at 696.  The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689.  "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694; *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (inquiry focuses on whether counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors. *Strickland*, 466 U.S. at 695-96.

"There is no constitutional right to appeal a criminal sentence." *United States v. Burns*, 433

9

F.3d 442, 445 (5th Cir. 2005) (citing *Jones v. Barnes*, 463 U.S. 745 (1983)). Counsel "is not burdened by any general duty to perfect an appeal of every criminal conviction." *White v. Johnson*, 180 F.3d 648, 652 (5th Cir. 1999). Counsel's failure to pursue an appeal can amount to ineffective assistance under *Strickland*, however. *See United States v. Pham*, 722 F.3d 320, 323 (5th Cir. 2013) (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 479-80 (2000)). A defendant can satisfy the deficience performance prong by demonstrating that counsel failed to follow the defendant's "express instructions with respect to an appeal." *Pham*, 722 F.3d at 323-24.

If a defendant proves by a preponderance of the evidence that he directed his attorney to file an appeal and it was not filed, prejudice is presumed regardless of the merits, and regardless of any appellate waiver. *United States v. Tapp*, 491 F.3d 263, 266 (5th Cir. 2007). When a defendant is denied the opportunity to appeal due to ineffective assistance of counsel, the defendant is entitled to an out-of-time appeal. *United States v. West*, 240 F.3d 456, 459 (5th Cir. 2001).

Movant's declaration states that he met with lead counsel and co-counsel immediately after sentencing and told them that he did not believe that the loss and restitution amounts were correct. Both counsel told him that they would request a hearing on the matter within 90 days. He asked whether they should file an appeal at that time or after the hearing, and they said that it was up to him whether he wanted to appeal. He instructed them to file a notice of appeal on his behalf.

At the hearing, Movant testified that while walking to the elevators, he told only co-counsel (not both attorneys) that he thought they needed to appeal the loss amount. He also testified that at the elevators, he asked to file an appeal, but that co-counsel said to wait until the hearing in 90 days, and that the loss amount would be corrected. At that point he thought that an appeal would not be necessary. At the meeting in the office with both counsel, he did not ask them to file an appeal. He

10

did not testify that he told counsel to appeal if the loss amount was not corrected within the 90-day period.

Although Movant's declaration stated that he instructed both counsel to appeal, he did not specifically testify at the hearing that he instructed either attorney to appeal. He wrote to the Court about other matters, but not about the appeal because he thought he still had the 90-day period for the loss amount to be corrected. He did not ask the trial attorneys about an appeal at any time after their post-sentencing meeting. He testified that he did not believe that he needed to ask them about an appeal because they were competent, and that he could not contact them after he went to prison. He sent an email to counsel about delaying his date to report to serve his sentence, but he did not mention an appeal because he was still waiting for the 90-day period. He wrote them a letter but did not receive a response. He did not testify that he inquired about an appeal in that letter or that he wrote them again. His ex-wife was the person who had contact and on-going discussions with the attorneys about a post-judgment matter that was not related to loss reduction or restitution. There was no evidence that she mentioned any appeal to the attorneys during their conversations. Although Movant filed several *pro se* post-judgment motions, he did not inform the Court that he had not heard from counsel about an appeal.

The attorneys did not recall any conversation at the elevator, or that Movant asked or directed them to appeal. Lead counsel would have filed an appeal if Movant had instructed him to do so.

After considering the testimony of all of the witnesses, their demeanor, their respective roles, any apparent bias, the discrepancies between Movant's declaration and his testimony, any explanations for the discrepancies, and corroborating evidence, the Court finds that Movant may

11

have asked his attorneys about an appeal while walking towards or standing at the elevators. After his discussion with co-counsel about the 90-day period for the loss amount to be corrected, however, he thought that an appeal would not be necessary, and he did not specifically instruct them to file an appeal at that time. He did not instruct them to file an appeal when they arrived at and met in their office. Nor did he instruct them to file an appeal thereafter. Movant has not proven by a preponderance of the evidence that he instructed counsel to appeal the judgment, and he has not shown that counsel was ineffective for failing to file a notice of appeal.

## IV. RECOMMENDATION

The motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 should be **DENIED** with prejudice.

**SIGNED** on this 26th day of March, 2019.

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE